WATSON, Senior Judge:
Defendanb-Appellant Christopher Summers challenges the two-level increase in his offense level determination made by the sentencing judge for making a “threat of death” during a bank robbery.
Because we find that the amended Sentencing Guideline applied to Summers increased his punishment over that provided at the time of his crime, we hold that it was applied to him in violation of the Ex Post Facto clause of the United States Constitution. We therefore vacate the sentence and remand for re-sentencing.
The sole issue presented here is whether a two-level sentence enhancement for making a “threat of death” during a bank robbery violated the constitutional prohibition against ex post facto laws.[1] *1330 We review questions of the application of the law to the facts in sentencing de novo. United States v. Burton, 933 F.2d 916, 917 (11th Cir.1991) (per curiam).
I. BACKGROUND
The sequence of events and the circumstances giving rise to this issue are as follows: On June 20, 1997 Summers robbed the First National Bank and Trust in Santa Rosa Beach, Florida, using a note that said “I’ve got a gun, give me $500.” At the time of that robbery, the 1995 version of the United States Sentencing Guidelines (U.S.S.G.) in § 2B3.1(b)(2)(F) provided for an increase of two levels “if an express threat of death was made.... ” As of the time of that robbery this Court had twice held that “[t]he statement, T have a gun’ is not a[n] express threat of death within the context of [s]ection 2B3.1(b)(2)([F])....” United States v. Canzater, 994 F.2d 773, 775 (11th Cir.1993) (per curiam); United States v. Moore 6 F.3d 715, 722 (11th Cir.1993).
After the robbery the Sentencing Commission, effective November 1, 1997, amended the guideline under discussion by deleting the word “express”. U.S.S.G.App. C., amend. 552 (November, 1997) Amendment 552 added commentary to the effect that “the defendant does not have to state expressly his intent to kill the victim in order for the enhancement to apply.”[2]
On December 18, 1997 the defendant was sentenced under the amended guideline, with the sentencing judge treating the amendment as a “clarification” of the previous guideline, finding that defendant had made a threat of death when he said “I’ve got a gun, give me $500” and adding two levels to the offense-level determination for the Santa Rosa Beach bank robbery. (R6-9).[3]
II. DISCUSSION
It is the general rule that a defendant is sentenced under the Sentencing Guidelines in effect on the date of sentencing unless doing so would violate the ex post facto clause of the United States Constitution. United States v. Bailey, 123 F.3d 1381, 1403 (11th Cir.1997). The primary consideration in finding an ex post facto violation is whether punitive enactments have failed to give individuals fair warning of their effect. Weaver v. Graham, 450 U.S. 24, 28-31, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981).
The starting point of our analysis is the apparent effect on the defendant of the amendment to the Sentencing Guidelines. At the time of the bank robbery in question Summers was on notice, so to speak, that saying “I have a gun” in the course of robbing a bank in the 11th Circuit did not amount to making an “express threat of death” and therefore would not increase his punishment. That understanding could be overcome in two ways; the Supreme Court could have ruled that, contrary to the holdings of this court, saying “I have a gun” was an “express threat of death” or the Sentencing Commission could have clarified its Guideline in a way *1331 that gave it a retroactive effect despite this court’s prior holdings.[4]
If, after Summers’ bank robbery and before his sentencing, the Supreme Court had held that “I have a gun” is an express threat of death under the Guidelines there would have been no ex post facto objections available to Summers. The decision of the Supreme Court would unquestionably be a “clarification” that, from the very beginning, the language of “express threat” included “I have a gun.” In effect, the Supreme Court would be saying that judges and bank robbers were indeed on notice as to that meaning at the time of the robbery. Any contrary understanding would have been illusory or mistaken.
The same cannot be said of what the Sentencing Commission did here, primarily because it had to change the language of the original guideline in order to accomplish its amendment.[5] At the very least, what that change must mean is that, within this circuit, the word “express” somehow prevented Summers from receiving a fair warning that saying “I have a gun” in the course of a bank robbery was punishable as an “express threat of death.” In other words, in contrast to what the Supreme Court might have done, the action of the Sentencing Commission did not necessarily speak to what the meaning of the guideline was at the time of the bank robbery because it had to change the language of the Guideline in order to express its intention clearly.
Amendment 552 was not merely an explanation or interpretation of the old Guideline. Consequently, the holding of Stinson v. United States, 508 U.S. 36, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993) that later commentary is authoritative does not apply here. This court has recognized that its rulings on sentencing can be informed by amended commentary to the Sentencing Guidelines. See, United States v. Dedeker, 961 F.2d 164 (11th Cir.1992). But, as was noted in that case, “nothing in the amended commentary either contradicts or substantively alters any relevant preexisting commentary,” and “the changes merely supplement commentary carried over from the earlier version.” United States v. Dedeker, at 166, note 4. Here, the case is far different and the alteration of actual Guideline language strongly suggests that a substantive change was being made.
That the amendment overturned earlier precedent in the Circuit is also significant. But, under Stinson, that can be done. Still, it cannot be done unless the amendment clarifies a meaning that was inherent in the original Guideline. If that meaning was needed to provide the fair warning required by the Constitution for criminal punishment it must be present with sufficient clarity to satisfy ex post facto concerns.
It is conceivable that, even with the change of Guideline language, the amendment by the Sentencing Commission might have been a “clarification” with retroactive effect if this court, in its earlier decisions, had indicated that it was interpreting ambiguous language and the “clarification” addressed that ambiguity.
But this court reached its conclusions about the meaning of “express threat of death” by examining the plain meaning of the Guideline language and the plain examples given in the commentary, without detecting the slightest ambiguity in the matter.[6] Nor does the conflict between *1332 the circuits necessarily arise from ambiguity in the original Guideline. As noted by the D.C. Circuit, the Eighth Circuit in United States v. Cadotte, 57 F.3d 661, 662 (8th Cir.1995) Arnold, M.S., J., dissenting, cert. denied 516 U.S. 1076, 116 S.Ct. 783, 133 L.Ed.2d 733 (1996), and the Ninth Circuit in United States v. Strandberg, 952 F.2d 1149, 1151 (9th Cir.1991) “effectively replaced the ‘express threat of death’ requirement with the commentary’s final sentence, ‘focusing on the degree of fear that the robber instilled in a reasonable victim.’ ” U.S. v. Robinson, 86 F.3d 1197, 1203 (D.C.Cir.1996). The D.C. Circuit, dealing with a robber who said he would shoot someone if he was not given money, saw itself as taking a less extreme approach when it read “express” as “clear” and held that “clear” allowed the threat to be discerned by interpretation, inference or implication.[7]
The Seventh Circuit opined that “a bank robber’s pointing his hand through his coat pocket, while claiming to have a gun ...” can be an express threat of death. U.S. v. Hunn, 24 F.3d 994, 997 (7th Cir.1994). The Fourth Circuit, dealing with a bank robber who said, after his demand for money, “I have a gun pointed at you” found that language indistinguishable from the commentary example of “Give me the money or I will shoot you”. U.S. v. Murray, 65 F.3d 1161, 1166-67 (4th Cir.1995).[8]
The Third Circuit, the only one dealing with the same “I have a gun” language as the cases in this Circuit, focused on the final sentence of the commentary to allow a threat of death to be based on the logical inferences of a reasonable victim. It also drew support from the then imminent deletion of the word “express” from the Guideline. United States v. Figueroa, 105 F.3d 874, 879-880 (3rd Cir.1997)
From the point of view of this Court, to the extent, if any, that other circuits have departed from a requirement that a threat of death be “express” they have done so not because of ambiguity in the Guideline, but due to either the mistaken understanding of plain language and specific examples or to the transformation of a necessarily vague summary of intent in the original commentary into the controlling standard of the Guideline. In any event, none of the other decisions purported to be dealing with ambiguous language.[9]
*1333 It follows that the Sentencing Commission was not clarifying ambiguous language but was making a substantive change in the Guideline by eliminating the key defining adjective in the operative language and expanding the guideline to cover conduct that was not “express.” At the very least, it was making a new start in the face of rampant confusion engendered-by an inconsistency between the “express” Guideline as exemplified by the “express” examples in the commentary on the one hand and the final summarizing statement in the commentary on the other. And this required a substantive change in the text of the Guideline.
Further support for the view that this was a substantive amendment can be found in the fact that the Sentencing Commission withdrew its initial characterization of the amendment as clarifying. When the amendment was first proposed the Commission stated that it “adopts the majority view and clarifies the Commission’s intent....” Proposed, Amendment to the Federal Sentencing Guidelines, 60 Crim. L. Rep. (BNA) 2019, 2035 (Jan. 15, 1997). The “clarification” motive was not mentioned in the final amendment.
It is also apparent that any attempt to amend this guideline purely by means of commentary would have inevitably run into the plain meaning of “express” and led to extreme awkwardness and gross internal contradiction. For example, if the word “express” had been left untouched and the Commission had only added its new commentary that “... the defendant does not have to state expressly his intent to kill the victim in order for the enhancement to apply,” the clash of meaning would have been palpable and irreconcilable. The word “express” had to be removed because it represented a meaning different from the one being fostered by the amendment, a meaning not inherent in the original Guideline; hence, the amendment was making a substantive change in the law. It was therefore a violation of the ex post facto clause of the Constitution to apply this amended Guideline to a crime committed at a time when a lesser punishment under the earlier Guideline was the law.
III. CONCLUSION
For the foregoing reasons, this case is REVERSED and REMANDED for re-sentencing consistent with this opinion.

. The disputed two-level increase was the only one that affected the guideline sentencing range in the sentencing of the defendant for a total of seven bank robberies. The challenged increase was done in sentencing on Count 3 of CR81-001, which, because it had an undisputed enhancement for obstruction of justice, was the count with the highest adjusted offense level and therefore, by operation of the multiple counts procedure of U.S.S.G. § 3D1.4, had five levels added to it, *1330 causing it to reach level 31 before being reduced by three points down to 28 for acceptance of responsibility. Without the disputed enhancement, no count would have had an adjusted offense level higher than 24. The multiple counts addition of five levels pursuant to U.S.S.G. § 3D1.4 would have then resulted in a maximum level of 29 and the 3-point reduction for acceptance of responsibility would have produced a total offense level of 26, a result 2 points lower than the one reached at sentencing.

. The Sentencing Commission stated that the "amendment addresses a circuit court conflict regarding the application of the ‘express threat of death enhancement ...' and further explained that the amendment 'adopts the majority appellate view which holds that the enhancement applies when the combination of the defendant’s actions and words would instill in a reasonable person in the position of the immediate victim (e.g., a bank teller) a greater amount of fear than necessaiy to commit the robbery. ’ "

. At one point (R7) the sentencing judge opined that, even if he were to use the earlier guidelines, he would still be obliged to apply the "clarifying amendment." In either event, the reasoning of this opinion is unaffected.

. This circuit could also have repudiated its earlier holdings in which case the effect would have been the same as that of a contrary Supreme Court ruling.

. Had it left the language of the guideline alone and merely commented in one way or another that "the 11th Circuit is wrong,” we would be facing a different problem. We would then have to decide between acceding to that comment as a clarification or rejecting it as a comment inconsistent with the plain meaning of the Guideline. 18 U.S.C. §§ 3553(a)(4),(b).

.In U.S. v. Canzater "express” was understood to mean “directly" or "distinctly stated” or "clearly indicated” and "not when the threat is implied or left to inference.” Canza-ter at 775. The same was understood in U.S. v. Moore and additional guidance was found in the examples given in the explanatory com- *1332 mentaiy. U.S.S.G. § 2B3.1(b)(2)(F), comment, note 7 read: An "express threat of death,” as used in subsection (b)(2)(F), may be in the form of an oral or written statement, act, gesture, or combination thereof. For example, an oral or written demand using words such as “Give me the money or I will kill you”, "Give me the money or I will pull the pin on the grenade I have in my pocket”, "Give me the money or I will shoot you”, "Give me the money or else (where the defendant draws his hand across his throat in a slashing motion)”, or "Give me the money or you are dead” would constitute an express threat of death. The court should consider that the intent of the underlying provision is to provide an increased offense level for cases in which the offender(s) engaged in conduct that would instill in a reasonable person, who is a victim of the offense, significantly greater fear than that necessary to constitute an element of the offense of robbery.

.At the same time, the D.C. Circuit staled that "I have a gun” would be less likely to satisfy its requirements and "indeed, on its face, it is not a 'threat' at all.” U.S. v. Robinson at 1203.

. That court criticized this Circuit for ignoring a commentary example it thought indicated a "direct implication” of death, i.e., the robber who says "Give me your money or else” and draws his hand across his throat in a slashing motion. This Court would obviously consider that the gesture of a hand slashed across the throat is an ancient and unmistakable express threat of death.
In a more convoluted situation a defendant was the accomplice of the robber who actually demanded money. The one who demanded the money said "or the person behind me [referring to the defendant accomplice] will shoot someone,” The Tenth Circuit found that was an express threat of death by the silent accomplice by operation of Subsection (B) of U.S.S.G. § IB 1.3(a)(1) under which all reasonably foreseeable acts of joint actors in criminal activity are imputed to a defendant for sentencing purposes. U.S. v. Lambert, 995 F.2d 1006, 1009 (10th Cir.1993).

. Not surprisingly, on the question of the plain meaning of the word “express” and the original Guideline this court finds most persuasive the opinion in United States v. Alexander, 88 F.3d 427 (6th Cir.1996) and the dis *1333 senting opinions of Judge Easterbrook in United States v. Hunn, 24 F.3d 994, 999-1000 (7th Cir.1994); Judge Becker in United States v. Figueroa, 105 F.3d 874, 880-882 (3rd Cir.1997) Judge Rovner in United States v. Carbaugh, 141 F.3d 791, 795-798 (7th Cir.1998) and Judge Lynch in United States v. Burns, 160 F.3d -82, 86-87 (1st Cir.1998). Removing the word “express” made an increase of punishment apply to cases in which the threat of death was inferred or implied. That was a substantive change.