RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 16a0115p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 15-3566

JESSE J. PAWLAK,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:14-cr-00305—Benita Y. Pearson, District Judge.

Argued: January 27, 2016

Decided and Filed: May 13, 2016

Before: BOGGS, GIBBONS, and GRIFFIN, Circuit Judges.

─────────────────

**COUNSEL**

**ARGUED:** Vanessa Malone, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Appellant. Jason M. Katz, UNITED STATES ATTORNEY'S OFFICE, Youngstown, Ohio, for Appellee. **ON BRIEF:** Wendi L. Overmyer, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Appellant. Jason M. Katz, UNITED STATES ATTORNEY'S OFFICE, Youngstown, Ohio, for Appellee.

GRIFFIN, J., delivered the opinion of the court in which BOGGS, J., joined, and GIBBONS, J., joined in Parts I–III. GIBBONS, J. (pp. 17–18), delivered a separate concurring opinion.

—————————

**OPINION**

—————————

GRIFFIN, Circuit Judge.  In this case, we consider whether the Supreme Court's holding in *Johnson v. United States*, 135 S. Ct. 2551 (2015), that the Armed Career Criminal Act's "residual clause" is unconstitutionally vague, compels the same result for an identical "residual clause" in the U.S. Sentencing Guidelines.  In light of *Johnson*, and given the legal force of the Guidelines as the framework for sentencing, we join the majority of our sister circuits in invalidating the Guidelines' "residual clause" as unconstitutionally vague.  In doing so, we recognize that our prior case law expressly disclaimed such a conclusion.  However, because the legal landscape interpreting the Guidelines has changed considerably, our prior decisions shielding the Guidelines from vagueness challenges are no longer consistent with Supreme Court precedent.  We therefore vacate defendant's sentence and remand for resentencing.

I.

After defendant Jesse Pawlak sold firearms to an undercover officer on four occasions, a grand jury indicted him on four counts of possessing a firearm or ammunition as a felon, in violation of 18 U.S.C. § 922(g)(1).  He pleaded guilty on all counts.  At sentencing, the district court calculated a base offense level of 26 pursuant to U.S.S.G. § 2K2.1(a)(1) because the offenses involved a "semiautomatic firearm that is capable of accepting a large capacity magazine," and Pawlak had two prior "felony convictions of either a crime of violence or a controlled substance offense."  U.S.S.G. § 2K2.1(a)(1).  One of Pawlak's two qualifying felony convictions was an Ohio third-degree burglary offense, a "crime of violence," *see United States v. Coleman*, 655 F.3d 480, 481 (6th Cir. 2011) (holding that Ohio's third-degree burglary statute constituted a violent felony under the residual clause of the Armed Career Criminal Act).  Absent that qualifying conviction, his base offense level would have been 22.  U.S.S.G. § 2K2.1(a)(3).  The district court added two levels to the base offense level under § 2K2.1(b)(1)(A) because Pawlak possessed six firearms.  The court also applied a four-level enhancement under § 2K2.1(b)(5) for trafficking in firearms.  After deducting three levels for acceptance of responsibility, Pawlak's total offense level was 29 with a criminal history category of IV,

resulting in an advisory Guidelines range of 121−151 months of incarceration. The court varied downward by four levels based on Pawlak's "regained respect for the law," making the new range 84−105 months, and sentenced Pawlak to 105 months.

## II.

Pawlak's appeal presents a matter of first impression: whether the residual clause in U.S.S.G. § 4B1.2(a) (career offender), and other Guidelines provisions incorporating its definition, are unconstitutionally vague after the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551, which invalidated a textually identical residual clause in the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). Although the parties acknowledge that we have previously held the Guidelines "are not susceptible to a vagueness attack" because "there is no constitutional right to sentencing guidelines," *United States v. Smith*, 73 F.3d 1414, 1417−18 (6th Cir. 1996) (quoting *United States v. Salas*, No. 93-5897, 1994 WL 24982, at *2 (6th Cir. Jan. 27, 1994) (unpublished table decision)), they agree that the Supreme Court has undermined our prior precedent in its intervening decisions. Accordingly, the parties maintain that *Johnson*'s reasoning applies equally to the Guidelines, and Pawlak's sentence should be vacated. We agree.[1]

The parties disagree regarding Pawlak's second claim of error—that the district court erroneously applied a four-level enhancement for firearms trafficking under § 2K2.1(b)(5) because Pawlak did not know or have reason to believe that his conduct would result in the transfer of a firearm to an individual "whose possession or receipt of the firearm would be unlawful," § 2K2.1 cmt. n.13(A)(ii)(I). We address each issue in turn.

---

[1]Although the parties agree that the residual clause of U.S.S.G. § 4B1.2(a) is unconstitutionally vague, "'our judgments are precedents, and the proper administration of the criminal law cannot be left merely to the stipulation of parties.'" *Sibron v. New York*, 392 U.S. 40, 58 (1968) (quoting *Young v. United States*, 315 U.S. 257, 259 (1942)). We therefore "conduct [our] own examination" of the merits underlying the parties arguments. *Id.*

III.

A.

The Due Process Clause of the Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend V. Among other things, this clause prohibits the enforcement of overly vague criminal laws. The Supreme Court has explained that the government "violates this guarantee by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson*, 135 S. Ct. at 2556 (citing *Kolender v. Lawson*, 461 U.S. 352, 357−58 (1983)). "The prohibition of vagueness in criminal statutes 'is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law,' and a statute that flouts it 'violates the first essential of due process.'" *Id.* at 2556−57 (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926)). "These principles apply not only to statutes defining elements of crimes, but also to statutes fixing sentences." *Id.* at 2557.

In *Johnson*, the Supreme Court invalidated the ACCA's residual clause as unconstitutionally vague. The Act increases sentences for offenders who have three previous convictions for violent felonies or serious drug offenses. 18 U.S.C. § 924(e)(1). It defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year . . . that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another; or . . . is burglary, arson, or extortion, involves the use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another* . . . ." *Id.* § 924(e)(2)(B) (emphasis added). The emphasized words have come to be known as the Act's "residual clause." *E.g.*, *Johnson*, 135 S. Ct. at 2556.

The *Johnson* Court observed that "[t]wo features of the residual clause conspire to make it unconstitutionally vague": first, the clause "leaves grave uncertainty about how to estimate the risk posed by a crime" by tying "the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-world facts or statutory elements"; and second, it "leaves uncertainty about how much risk it takes for a crime to qualify as a violent felony." *Id.* at 2557−58.

Moreover, the Court observed that its "repeated attempts and repeated failures to craft a principled and objective standard out of the residual clause confirm its hopeless indeterminacy." *Id.* at 2558. The ACCA's residual clause thus "produces more unpredictability and arbitrariness than the Due Process Clause tolerates." *Id.*

### B.

Since *Johnson*, federal courts have grappled with the unresolved question of whether the Guidelines' residual clause is also unconstitutionally vague. The text of the two residual clauses is the same, *compare* 18 U.S.C. § 924(e)(2)(B)(ii) *with* U.S.S.G. § 4B1.2(a)(2), and we interpret them identically, *see, e.g.*, *United States v. Ford*, 560 F.3d 420, 421 (6th Cir. 2009). The principal legal argument against applying *Johnson* to the Guidelines is not that their meanings are distinguishable but that the Guidelines are advisory, as opposed to "statutes fixing sentences," 135 S. Ct. at 2557, and therefore outside the reach of the vagueness doctrine. Given that the residual clauses are identical, the only reason *Johnson* would not compel the same result is if the Guidelines were immune from vagueness challenges.

Our analysis begins with the function of the Guidelines. In *Peugh v. United States*, the Supreme Court held that the Guidelines are subject to constitutional challenge "notwithstanding the fact that sentencing courts possess discretion to deviate from the recommended sentencing range." 133 S. Ct. 2072, 2082 (2013). In that case, the Court considered whether the *Ex Post Facto* Clause is violated when a defendant is sentenced under Guidelines providing a higher advisory sentencing range than the Guidelines in effect at the time of the offense. *Id.* at 2081. The Court explained that "[t]he post-*Booker* federal sentencing scheme aims to achieve uniformity by ensuring that sentencing decisions are anchored by the Guidelines and that they remain a meaningful benchmark through the process of appellate review." *Id.* at 2083. Whereas the "federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing[,] . . . [a] retrospective increase in the Guidelines range applicable to a defendant creates a sufficient risk of a higher sentence to constitute an *ex post facto* violation." *Id.* at 2084.

Although the Guidelines are not mandatory, the Supreme Court has emphasized that they have considerable influence on sentencing determinations because of the procedures district

courts must follow in imposing sentences. "As we have described, 'district courts *must* begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process.'" *Id.* at 2083 (quoting *Gall v. United States*, 552 U.S. 38, 50 n.6 (2007)). "Failing to calculate the correct Guidelines range constitutes procedural error." *Id.* "A district court contemplating a non-Guidelines sentence 'must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Id.* (quoting *Gall*, 552 U.S. at 50).

"These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range.' Even if the sentencing judge sees a reason to vary from the Guidelines, 'if the judge uses the sentencing range as the beginning point to explain the decision to deviate from it, *then the Guidelines are in a real sense the basis for the sentence*.'" *Id.* (quoting *Freeman v. United States*, 131 S. Ct. 2685, 2692 (2011) (plurality opinion) (citation omitted)); *see also Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345−46 (2016) (discussing the "real and pervasive effect the Guidelines have on sentencing."). "That a district court may ultimately sentence a given defendant outside the Guidelines range does not deprive the Guidelines of force as the framework for sentencing. Indeed, the rule that an incorrect Guidelines calculation is procedural error ensures that they remain the starting point for every sentencing calculation in the federal system." *Id.* In other words, "the Guidelines are the mandatory starting point for a sentencing determination; a district court can be reversed for failing to correctly apply them despite the ability to later deviate from the recommended range." *United States v. Madrid*, 805 F.3d 1204, 1211 (10th Cir. 2015) (declaring the Guidelines' residual clause unconstitutionally vague); *see United States v. Litzy*, No. 3:15-00021, 2015 WL 5895199 (S.D. W. Va. Oct. 8, 2015) ("[A]lthough judges may decide to sentence not within the Guidelines, judges *must* consult the Guidelines and they stray from Guideline sentences at their own peril, making the Guidelines quasi-advisory in effect and bringing them closer to a statute which fixes sentences than a sort of suggested option. In effect, the Sentencing Guidelines do not just *guide* or *assist* judges on how to sentence as much as they *direct* judges to sentences deemed appropriate by policy-makers in certain types of cases." (citation omitted)).

*Peugh* reflects the Court's judgment that the Guidelines are subject to constitutional challenges because the Guidelines are the mandatory starting point for sentencing determinations and district courts can be reversed for failing to correctly apply them despite the judges' discretion to deviate from the recommended range. *See* 133 S. Ct. at 2083; *Madrid*, 805 F.3d at 1211. The Supreme Court's reasoning in *Peugh* rests on the very same principles of fair notice and avoiding arbitrary enforcement underlying the doctrine of due process. *Compare Peugh*, 133 S. Ct. at 2081−82 (discussing meaning of the term "*ex post facto*," under English common law), *and Miller v. Florida*, 482 U.S. 423, 429 (1987) ("[T]he reason the *Ex Post Facto* Clauses were included in the Constitution was to assure that federal and state legislatures were restrained from enacting arbitrary or vindictive legislation[,] . . . [and] the Clauses were aimed at a second concern, namely, that legislative enactments 'give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed.'" (quoting *Weaver v. Graham*, 450 U.S. 24, 28−29 (1981)), *with Johnson*, 135 S. Ct. at 2556 (observing that a criminal law is unconstitutionally vague when it "fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement") *and Kolender*, 461 U.S. at 357−58 (same). Given the Supreme Court's emphasis on the role of the Guidelines as the legal framework of sentencing, it would be incongruous for us to conclude that these constitutional concerns of notice and arbitrary enforcement are triggered only if a vague provision also creates a sufficient risk of a higher sentence.

We conclude that it would be erroneous after *Peugh* to view the Guidelines as so distinguishable from "statutes fixing sentences," *Johnson*, 135 S. Ct. at 2557, to be immune from vagueness challenges but not other constitutional attacks. Post-*Johnson* and *Peugh*, the fact that the Guidelines are not mandatory is a distinction without a difference. In our view, *Johnson*'s rationale applies with equal force to the Guidelines' residual clause.

C.

Moreover, the Guidelines, whether mandatory or advisory, have always been subject to some constitutional limitations. The Guidelines "are the equivalent of legislative rules adopted by federal agencies." *Stinson v. United States*, 508 U.S. 36, 45 (1993). Agency regulations, of course, are subject to constitutional challenge, and the Supreme Court has invalidated regulations

on vagueness grounds.  *See, e.g.*, *FCC v. Fox Television Stations, Inc.*, 132 S. Ct. 2307, 2320 (2012).  It follows, therefore, that because the Guidelines are "equivalent" to regulations, which are subject to constitutional challenges such as vagueness, the Guidelines should also be subject to vagueness challenges.

Indeed, the Supreme Court has resolved both constitutional challenges to the Guidelines as a whole and individual Guidelines provisions.  *See, e.g.*, *Mistretta v. United States*, 488 U.S. 361 (1989) (upholding Guidelines as constitutional, not an excessive delegation of legislative power or a violation of the separation-of-powers doctrine); *Wade v. United States*, 504 U.S. 181 (1992) (holding that the government's refusal to file a substantial-assistance motion under U.S.S.G. § 5K1.1 is subject to judicial review for unconstitutional motive).  And in *Stinson*, the Court explained that Guidelines commentary, just as an agency's interpretation of its own regulations, is entitled to controlling weight as long as it "does not violate the Constitution or a federal statute."  508 U.S. at 45.  Nothing in *Johnson* suggests that it overrules these cases or limits the vagueness doctrine to criminal statutes.  In light of this history, we see no legal basis for concluding that the Guidelines are uniquely immune to vagueness challenges.

D.

Recent developments among our sister circuits support our holding.  In *United States v. Madrid*, for instance, the Tenth Circuit declared *Johnson* "unambiguous":  the "vagueness doctrine exists not only to provide notice to individuals, but also to prevent judges from imposing arbitrary or systematically inconsistent sentences."  805 F.3d at 1210.  Observing that it interprets the Guidelines' residual clause by reference to its ACCA counterpart, the *Madrid* court explained that the "concerns about judicial inconsistency that motivated the Court in *Johnson* lead us to conclude that the residual clause of the Guidelines is also unconstitutionally vague.  If one iteration of the clause is unconstitutionally vague, so too is the other."  *Id.*  The court emphasized that the advisory nature of the Guidelines did not alter its conclusion:  "The Supreme Court has held that the Guidelines are subject to constitutional challenge 'notwithstanding the fact that sentencing courts possess discretion to deviate from the recommended sentencing range.'"  *Id.* at 1211 (quoting *Peugh*, 133 S. Ct. at 2082).  "Further, the Guidelines are the mandatory starting point for a sentencing determination; a district court can be

reversed for failing to correctly apply them despite the ability to later deviate from the recommended range." *Id.* (citing *Gall*, 552 U.S. at 49−51). "Because the Guidelines are the beginning of all sentencing determinations, and in light of the 'unavoidable uncertainty and arbitrariness of adjudication under the residual clause,' we hold that the residual clause of § 4B1.2(a)(2) is void for vagueness." *Id.* (quoting *Johnson*, 135 S. Ct. at 2562) (citation and footnote omitted). Finally, the Tenth Circuit acknowledged that there exists a "conflict among the circuits in regard to whether the Guidelines may be challenged on vagueness grounds," but distinguished the cases shielding the Guidelines from vagueness challenges on the basis that they pre-dated *Peugh*. *Madrid*, 805 F.3d at 1211 n.9 (collecting cases).

The Third Circuit has also invalidated the Guidelines' residual clause as unconstitutionally vague after *Johnson*. *United States v. Townsend*, No. 14-3652, 2015 WL 9311394, at *4 & n.14 (3d Cir. Dec. 23, 2015) ("We are guided, in this case, by our own circuit precedent interpreting the residual clauses in the Guidelines and the ACCA in light of their identical wording and by the Government's concession that Townsend should be resentenced."). Other courts have accepted the government's concession that *Johnson* applies and have remanded for resentencing. *See, e.g.*, *United States v. Maldonado*, No. 12-3487-cr, 2016 WL 229833, at *3 (2d Cir. Jan. 20, 2016) (proceeding "on the assumption that the Supreme Court's reasoning with respect to the ACCA's residual clause applies to the identically worded Guideline § 4B1.2(a)(2)'s residual clause"); *Ramirez v. United States*, 799 F.3d 845, 856 (7th Cir. 2015) (same); *United States v. Taylor*, 803 F.3d 931 (8th Cir. 2015) (per curiam).

Since *Johnson*, only one circuit has affirmatively held that the Guidelines are not affected. The Eleventh Circuit in *United States v. Matchett* declined to invalidate § 4B1.2(a)(2) because, in its view, the Guidelines are not susceptible to vagueness challenges. 802 F.3d 1185, 1193−96 (11th Cir. 2015). The premise of the court's analysis was that the Guidelines are "merely . . . the initial benchmark" of sentencing, "designed to assist . . . the sentencing judge in determining a sentence," which means "defendants cannot rely on them to communicate the sentence that the district court will impose." *Id.* at 1194 (internal quotation marks omitted). For support, the court cited a limited universe of pre-*Peugh* cases from other circuits holding that because there is no constitutional right to sentencing guidelines, the limitations the Guidelines

place on judicial discretion cannot violate defendants' rights to due process by reason of being vague. *Id.* at 1194−95 (citing *United States v. Tichenor*, 683 F.3d 358, 364 (7th Cir. 2012) and *United States v. Wivell*, 893 F.2d 156, 160 (8th Cir. 1990)).

But intervening Supreme Court decisions have undermined both *Wivell* and *Tichenor*. First, *Wivell*. That case rests on the assumption that the vagueness doctrine was limited to liability, not sentencing. 893 F.2d at 159−60. No one disputes that *Johnson* has since clarified that the doctrine extends "not only to statutes defining elements of crimes, but also to statutes fixing sentences." 135 S. Ct. at 2557. It also rests on the faulty notion that because "there is no constitutional right to sentencing guidelines[,] . . . the limitations the Guidelines place on a judge's discretion cannot violate a defendant's right to due process by reason of being vague." 893 F.2d at 160. But, as the appellant persuasively argued to the *Matchett* court, "[t]hat reasoning is fundamentally flawed. Even if the Guidelines are not constitutionally required, that does not afford them constitutional immunity once they are put into place. Indeed, *Wivell*'s reasoning would permit the Commission to promulgate Guidelines that discriminated on the basis of a protected class, penalized the exercise of constitutional rights, or bore no rational relationship to the goals of sentencing. That cannot be the law." Appellant Suppl. Br., at *11−12, *United States v. Matchett*, No. 14-10396, 2015 WL 5175083 (11th Cir. Sept. 21, 2015) (footnote omitted). It makes sense that the Eighth Circuit itself has since called *Wivell* into question when vacating and remanding a sentence in light of *Johnson*. *Taylor*, 803 F.3d at 933 ("The reasoning in *Wivell* that the guidelines cannot be unconstitutionally vague because they do not proscribe conduct is doubtful after *Johnson*.").

Second, *Tichenor*. There, the Seventh Circuit reasoned that vagueness principles are inapplicable to the Guidelines because the Guidelines do not function like statutes in that they merely structure a judge's discretion. 683 F.3d at 364. But a year later, *Peugh* rejected the government's assertion that the Guidelines were merely "guideposts" that lacked the "force and effect of laws," explaining that the Guidelines "anchor both the district court's discretion and the appellate review process." 133 S. Ct. at 2085−87. And to the extent that *Tichenor* relied on *United States v. Demaree*, 459 F.3d 791 (7th Cir. 2006), to distinguish the Guidelines from criminal statutes, that is the very *ex post facto* case that *Peugh* abrogated.

The remainder of *Tichenor*'s analysis is likewise unpersuasive. First, it relied on the same assumption as *Wivell* that the vagueness doctrine is limited to liability, not sentencing. *See* 683 F.3d at 363−64; *see also Taylor*, 803 F.3d at 933 (calling *Wivell* into doubt after *Johnson*). Second, it mistakenly relied on *Irizarry v. United States*, 553 U.S. 708 (2008). On this point, it merits only brief mention that *Irizarry* implicates a distinguishable notice interest from the one at issue here. Both the *Matchett* and *Tichenor* courts cited *Irizarry* for the proposition that any expectation that a defendant would receive a sentence within the presumptively applicable Guidelines range "'did not survive [the] decision in *United States v. Booker*.'" *Matchett*, 802 F.3d at 1194 (quoting *Irizarry*, 553 U.S. at 713); *see Tichenor*, 683 F.3d at 364. But *Irizarry* does not establish that the substance of the Guidelines need not provide notice of the basis for sentencing. Rather, it resolved a different notice question. The Due Process Clause consists of two separate notice requirements: first, that the law inform the public of what conduct is prohibited and the consequences of such conduct ("ex ante notice"), *see, e.g.*, *Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939); and second, even if the law clearly notifies the public of prohibited conduct, due process requires the government to provide a defendant with notice of the allegations and an opportunity to respond ("adversarial notice"), *see, e.g.*, *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950). *See* Brief of Law Professors as Amicus Curiae in Support of Defendant-Appellant ("Law Professors' Amicus Brief"), at *8−10, *United States v. Matchett*, No. 14-10396, 2015 WL 6723558 (11th Cir. Oct. 15, 2015); *see also* Carissa Byrne Hessick & F. Andrew Hessick, *Procedural Rights at Sentencing*, 90 Notre Dame L. Rev. 187 (2014) (discussing *Irizarry*'s due process significance in mandatory and discretionary sentencing schemes). It is clear that the void-for-vagueness doctrine derives from the first category of notice because it requires the law to adequately notify the public of what conduct is prohibited and the penalties for engaging in such conduct. *See* Law Professors' Amicus Brief, at *10. *Irizarry* implicated the second kind of notice because it held that a sentencing court was not required to notify a particular defendant in a particular case that it might impose an above-Guidelines sentence. 553 U.S. at 715. *Irizarry* is thus inapposite. After *Peugh*, it is our view that *Tichenor*'s reasoning is flawed and that the *Matchett* court was mistaken to rely on it.

E.

Finally, we respectfully disagree with the *Matchett* court that exposing the Guidelines to vagueness challenges will "upend our sentencing regime." 802 F.3d at 1196. First, the Supreme Court dismissed this very concern in *Johnson*. The Court explained that, unlike the ACCA's residual clause, which "requires application of the 'serious potential risk' standard to an idealized ordinary case of the crime," the laws cited by the government as potentially vague (using terms like "substantial risk," "grave risk," and "unreasonable risk") are laws that "require gauging the riskiness of conduct in which an individual engages *on a particular occasion*." 135 S. Ct. at 2561. "As a general matter, we do not doubt the constitutionality of laws that call for the application of a qualitative standard such as 'substantial risk' to real-world conduct; the law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree." *Id.* (quoting *Nash v. United States*, 229 U.S. 373, 377 (1913)). In other words, laws fixing sentences that are based on "real-world conduct" are unlikely to raise the same vagueness concerns.

Second, as amicus noted in the *Matchett* case:

What is more, even if there are current or future Guidelines that are insufficiently precise, the Commission is well-situated to resolve that ambiguity. As the Supreme Court has noted, the Sentencing "Commission's work is ongoing." *Rita v. United States*, 551 U.S. 338, 350 (2007). It regularly amends the Sentencing Guidelines in response to evolving concerns, including disagreement about how to interpret and apply certain guidelines. *See, e.g., United States v. Summers*, 176 F.3d 1328, 1334 (11th Cir. 1999) (Carnes, J., dissenting) ("When an ambiguity . . . results in differing applications of the same guideline, the Commission has the authority, perhaps the duty, to clarify matters.").

Indeed, the Commission has already taken action to amend § 4B1.2(a)(2) in the wake of *United States v. Johnson*; it has given notice and requested public comment on a proposed amendment to delete the residual clause and replace it with a finite list of predicate offenses. Sentencing Guidelines for the United States Courts, 80 Fed. Reg. 49,314 (2015). If this amendment takes effect, § 4B1.2(a)(2) will be sufficiently precise so as to avoid any vagueness concerns. Consequently, a decision that § 4B1.2(a)(2) is unconstitutionally vague would hardly "upend our sentencing regime." Rather it would be entirely consistent with what the Sentencing Commission has already acknowledged—that § 4B1.2(a)(2) is flawed and should not continue to inform the Guidelines calculation in its current form.

Law Professors' Amicus Brief, at \*14.  We find this grounded approach more compelling than the *Matchett* court's concern that subjecting the Guidelines to vagueness challenges would "upend our sentencing regime," 802 F.3d at 1196.[2]

F.

For the same reasons, we must also part ways with our own precedent.  In *United States v. Smith*, 73 F.3d 1414 (6th Cir. 1996), we held that the Guidelines were not susceptible to vagueness attacks.  In doing so, we relied exclusively on our unpublished decision of *United States v. Salas*, 1994 WL 24982 (unpublished table decision), which followed *Wivell*, 893 F.2d at 159−60, the aforementioned case that the Eighth Circuit has now called into question in *Taylor*, 803 F.3d at 933.  While a published decision of our court binds subsequent panels, when an intervening decision of the United States Supreme Court requires modification of our prior decision, we are no longer bound by our precedent.  *United States v. Elbe*, 774 F.3d 885, 891 (6th Cir. 2014).  For the reasons stated, we hold that the legal landscape surrounding the Guidelines, as announced by the Supreme Court, has sufficiently changed that our precedent can no longer stand.

After *Johnson*, no one disputes that the identical language of the Guidelines' residual clause implicates the same constitutional concerns as the ACCA's residual clause.  In the words of the Tenth Circuit, "[g]iven our reliance on the ACCA for guidance in interpreting § 4B1.2, it stretches credulity to say that we could apply the residual clause of the Guidelines in a way that is constitutional, when courts cannot do so in the context of the ACCA."  *Madrid*, 805 F.3d at 1211.  Our reading of the current state of the law as established by the Supreme Court compels our holding that the rationale of *Johnson* applies equally to the residual clause of the Guidelines.  Accordingly, we hold that the residual clause of U.S.S.G. § 4B1.2(a) is unconstitutionally vague.

Because Pawlak's Ohio third-degree burglary offense is no longer a qualifying conviction, *see Coleman*, 655 F.3d at 481, he must be resentenced.

---

[2]The Commission has since adopted its proposed amendment to the definition of "crime of violence" in the Guidelines.  Amendment to the Sentencing Guidelines (Preliminary) (Jan. 8, 2016), at ii, http://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/201　　60108_RF.pdf (effective Aug. 1, 2016).

IV.

Next, Pawlak argues that the district court erred in applying a four-level enhancement for firearms trafficking because the facts are insufficient to establish that he knew or had reason to believe that the firearms recipient was a person whose possession of firearms would be unlawful, as required by U.S.S.G. § 2K2.1(b)(5).

"[W]e apply a clearly-erroneous standard of review to the district court's findings of fact, [but] the determination of whether specific facts actually constitute [the enhancement] is a mixed question of fact and law that we review *de novo*." *United States v. Bazazpour*, 690 F.3d 796, 805 (6th Cir. 2012). "The district court is required to find the facts supporting this provision by a preponderance of the evidence." *United States v. Freeman*, 640 F.3d 180, 188 (6th Cir. 2011) (discussing § 2K2.1(b)(5)).

Under U.S.S.G. § 2K2.1(b)(5), a "defendant [who] engage[s] in the trafficking of firearms" is subject to a four-level enhancement. The government must prove that the defendant (1) "transported, transferred, or otherwise disposed of two or more firearms to another individual," and (2) "knew or had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual" (a) "whose possession or receipt of the firearm would be unlawful" or (b) "who intended to use or dispose of the firearm unlawfully." *Id.* cmt. n.13(A). An "'[i]ndividual whose possession or receipt of the firearm would be unlawful' means an individual who (i) has a prior conviction for a crime of violence, a controlled substance offense, or a misdemeanor crime of domestic violence; or (ii) at the time of the offense was under a criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." *Id.* cmt. n.13(B). In assessing a defendant's knowledge, a "sentencing court is permitted to make common-sense inferences from the circumstantial evidence." *United States v. Juarez*, 626 F.3d 246, 256 (5th Cir. 2010) (internal quotation marks omitted) (affirming application of an enhancement under § 2K2.1(b)(5)); *see United States v. Ruth*, No. 95-5977, 1996 WL 185760 (6th Cir. Apr. 17, 1996) (unpublished table decision) ("[C]ircumstantial evidence may be sufficient by itself to convict a defendant, and is certainly sufficient to support a sentencing enhancement, which carries a much lower burden of proof." (internal citation and emphasis omitted)).

In this case, the government maintains that the following circumstantial evidence establishes by a preponderance of the evidence that Pawlak had *reason to believe* that possession of firearms by the confidential informant and undercover officer would have been unlawful: (1) the surreptitious nature of the sales (wrapping firearms in a blanket or paper bag, conducting transactions in the privacy of Pawlak's bedroom, and refusing to count the money outside); (2) the "quantity and quality" of the firearms (selling six semi-automatic guns with ammunition to the same buyer on four occasions within 60 days); and (3) the price (double the market value). Additionally, the undercover officer told Pawlak that he left his "truck running because, uh, in case something goes wrong I have to dash for it," implying that he was prohibited from purchasing the firearms.

We find these facts sufficient to establish that it is more likely than not that Pawlak had reason to believe that the buyer was obtaining firearms on the black market at double the usual cost because he was prohibited from purchasing firearms by legal means—especially given the heavily inflated price and the "dash for it" comment. In context, the "dash for it" comment strongly suggests that the officer's very possession of firearms was illegal. Although the comment was made during the fourth and final sale, that transaction involved two firearms, so it would support application of the enhancement without reference to the three previous sales. *See* U.S.S.G. § 2K2.1(b)(5) cmt. n.13(A)(i) ("two or more firearms").

Pawlak's argument on appeal is that the "government failed to introduce any evidence to show the [confidential informant] or [undercover officer] met the[] requirements" of a person whose possession would be unlawful under § 2K2.1(b)(5). We interpret his argument to be that the government was required to establish that the firearm recipient was actually prohibited from possessing firearms.[3] But that misstates the government's burden. That the recipient was an undercover officer whose possession was not actually unlawful is immaterial if the defendant "had reason to believe" that the officer's possession would have been unlawful if the facts were as the defendant understood them. *United States v. Henry*, No. 15-5578, 2016 WL 1392480, at *9 (6th Cir. Apr. 8, 2016); *see also United States v. Fields*, 608 F. App'x 806, 812−13 (11th Cir.

---

[3]Pawlak argues that the confidential informant was not a buyer or recipient of the firearms. But we need not resolve whether the confidential informant was a buyer or recipient because the enhancement applies with respect to the undercover officer who was undisputedly a buyer and recipient.

2015) (per curiam) ("Because nothing in the Guidelines commentary suggests the defendant's belief must be true, Fields's focus on the fact he transferred firearms solely to an undercover officer is unpersuasive."); *see United States v. Asante*, 782 F.3d 639, 644 (11th Cir. 2015) (for purposes of § 2K2.1(b)(5), a court looks to the circumstances as "known to the defendant"). It bears repeating that the government was only required to establish that Pawlak had "reason to believe" that the recipient's possession would be unlawful, if the facts were as Pawlak understood them. The government met this burden.

The district court did not err in applying the firearms-trafficking enhancement on the basis of the recipient's unlawful possession of firearms. Given our conclusion, we need not reach the alternative argument that the recipient's intended use of the firearms was unlawful.

V.

For the reasons stated in Part III, we vacate Pawlak's sentence. Because Pawlak's third-degree burglary offense is no longer a qualifying felony for purposes of Guidelines § 2K2.1(a)(1), he must be resentenced consistent with this decision. We remand for resentencing.

---------------

**CONCURRENCE**

---------------

JULIA SMITH GIBBONS, Circuit Judge, concurring.  I concur in full in Parts I–III of the opinion. With respect to Part IV, I would caution against deciding this case on the rationale utilized in the majority court opinion. While the opinion correctly states that the individual's possession of the firearm in question need not be actually unlawful, it overlooks the fact that the defendant must have had knowledge or reason to believe that the individual to whom the firearm was transferred had certain prior convictions or is under a criminal justice sentence. *See United States v. Asante*, 782 F.3d 639, 643–44 (11th Cir. 2015) (holding that the government failed to prove the defendant's actions fell under the unlawful possession prong "[b]ecause the Government failed to present any evidence that [the defendant] knew that his conduct would result in a firearm being transferred to" an individual falling under the narrow guidelines' definition of an individual in unlawful possession); *United States v. Howard*, 539 F. App'x 904, 908 (10th Cir. 2013) (holding that the defendant's actions fell under the unlawful possession prong where the defendant transferred at least one firearm to a known felon); *United States v. Richardson*, 427 F. App'x 522, 523–24 (7th Cir. 2011) (holding that the district court erred because it applied the enhancement without taking into account whether the defendant knew or should have known possession would be unlawful); *United States v. Green*, 405 F. App'x 860, 862 (5th Cir. 2010) (vacating the sentence in light of the government's concession that there was no evidence that the individuals receiving the firearms "had a relevant criminal conviction or [were] under a criminal justice sentence at the time of the offense"). *But see United States v. Pepper*, 747 F.3d 520, 525 (8th Cir. 2014) (holding that both the unlawful possession and unlawful use prongs were met and noting that the firearm transferred to the individual "was not registered, making [the individual's] possession of it necessarily unlawful"). Instead, I believe that the stronger argument supporting the enhancement is the government's alternative argument—that Pawlak had reason to know that the recipient intended unlawful use of the firearm. The facts relied on support the inference that the defendant had reason to know that the recipient's possession was unlawful more obviously support an intended unlawful use.

For this reason, I would resolve the case based on unlawful use, not unlawful possession, or at least base our affirmance on both grounds.