MARTIN, Circuit Judge,
joined by JILL PRYOR, Circuit Judge, dissenting from the denial of rehearing en banc:
The United States Sentencing Guidelines generally call for longer prison sentences for defendants who have a history of criminal convictions. Calvin Matchett’s sentence was based, in part, on a guideline provision that calls for a harsher punishment for people whose earlier crime “involves conduct that presents a serious potential risk of physical injury to another.” USSG § 4B1.2(a)(2). The Supreme Court has told us that these 13 words, referred to as the “residual clause” and alsb found in the ' Armed Career Criminal Act (ACCA), are so vague that prison sentences based on them violate the Due Process Clause of the Fifth Amendment. See Johnson v. United States, — U.S. —, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015). In explaining its ruling, the Court analyzed cases applying these 13 words from the Sentencing Guidelines as well as cases applying the same words from ACCA. This review led to the Court’s conclusion that these words have “proved nearly impossible to apply consistently.” Id. at 2560 (quotation omitted).
The criticisms the Supreme Court leveled at this language in ACCA apply equally to the identical words found in the Sentencing Guidelines. Indeed, every other Court of Appeals (ten total) has either held or assumed that Johnson makes these 13 words unconstitutionally vague in both ACCA and the Sentencing Guidelines.[1] *1134 The government argues the same. But in the face of this uniform view to the contrary, a panel of this court ruled that the vagueness doctrine does not apply to the Sentencing Guidelines, so neither does Johnson. See United States v. Matchett, 802 F.3d 1185 (11th Cir. 2015). By doing so, the panel has taken away all ability of judges on this court to give relief to people serving prison sentences that were calculated based on language that the Supreme Court said resulted in “more unpredictability and arbitrariness than the Due Process Clause tolerates.”[2] Johnson, 135 S.Ct. at 2558.
Over eleven months ago Mr. Matchett asked this court to rehear his case. Only now do we issue our ruling denying his petition for rehearing. In the intervening months, the Supreme Court granted cer-tiorari in a case that will allow it to evaluate the panel opinion in Matchett.[3] In doing so, the Court will be able to address the questions presented by Mr. Matchett’s case. But in the meantime the panel’s Matchett opinion will continue to dictate how this Circuit treats hundreds of prisoners who were sentenced in Alabama, Florida and Georgia. I had very much hoped that the outlier position that now constitutes binding precedent for our Circuit would be reconsidered by our court as a whole. It is with disappointment therefore that I dissent to the decision by the majority of this court not to rehear the appeal of Calvin Matchett.
I.
The panel’s opinion in Matchett affects a lot of people. In establishing the framework for federal sentencing, the Sentencing Guidelines routinely set harsher sentencing ranges for people convicted of a “crime of violence” earlier in their lives. The Guidelines define this term “crime of violence” in three ways, one of which is the 13 words the Supreme Court ruled unconstitutional in Johnson: an offense that “involves conduct that presents a serious potential risk of physical injury to another.” USSG § 4B1.2(a)(2). Perhaps the most severe sentencing enhancement that incorporates this definition is known as the “career offender” guideline, which applies to defendants with “at least two prior felony *1135 convictions of either a crime of violence or a controlled substance offense.” USSG § 4B1.1. “Pursuant to that Guideline, each defendant who qualifies for career offender status is automatically placed in criminal history ‘Category VI,’ the highest available under the Guidelines.” United States v. LaBonte, 520 U.S. 751, 754, 117 S.Ct. 1673, 1675, 137 L.Ed.2d 1001 (1997). No matter how low a defendant’s criminal history score otherwise might be, once he is found to be a career offender, he is placed in the worst class of offenders. In fiscal year 2014 alone 2,269 people around the country were sentenced using the “career offender” guideline.[4]
The 13 word definition of “crime of violence” found in § 4B1.2(a)(2) is also used in other guidelines, where it triggers harsher guideline ranges for people being sentenced under those guidelines. Seé, e.g., id. § 2K1.3 (the Guidelines section for crimes involving explosives, which requires a 12-level increase for two prior “crimes of violence”); id. § 2K2.1 (the section for firearm crimes, which was the basis for Mr. Matchett’s sentence, and can double a defendant’s guideline range for one “crime of violence” or triple or quadruple it based on two[5]); id. § 2S1.1 (the section for laundering crimes); id. '§ 7B1.1 (the section for probation and supervised release violations).
The decision of this court to leave the Matchett panel opinion in effect — even in light of the uniform rejection of its ruling by other federal courts of appeal — results in harsher treatment for prisoners who were sentenced in the Eleventh Circuit. Calvin Matchett’s case demonstrates this point. Mr. Matchett was sentenced in Florida but is serving his sentence outside the Eleventh Circuit. See http://www.bop.gov/ inmateloc. He is likely in prison with other inmates who committed the same federal crime he did. The other inmates were prosecuted by the same federal ■ government and sentenced by federal judges who all took the same oath. But if he is the only inmate sentenced in the Eleventh Circuit, Mr. Matchett alone will serve out a prison term based on a standard that the Supreme Court has found results in “un *1136 avoidable uncertainty and arbitrariness of adjudication.” Johnson, 135 S.Ct. at 2562. His fellow inmates sentenced outside the Eleventh Circuit have likely been back before a judge for a new sentence that does not violate Johnson.
II.
The Matchett panel opinion rests on two flawed assertions. It limits application of the vagueness doctrine and it makes an unjustified distinction between ACCA and the Sentencing Guidelines. Then Matchett stands on this .foundation to put the Guidelines beyond the reach of the vagueness doctrine. Specifically, the panel says the vagueness doctrine applies only to “laws that regulate the primary conduct of private individuals.” Pryor Op. at 1-123.[6] With that, the Matchett panel reasons that the provisions of ACCA are subject to the vagueness doctrine because ACCA regulates private conduct. And even though sentencing judges administer the residual clause in the Sentencing Guidelines by exactly the same process that they used to administer the identical provision in ACCA, Matchett says the Guidelines “are directed to judges, not private citizens,”[7] so the vagueness doctrine cannot apply. Pryor Op. at 1126.
Neither the panel’s characterization of the Sentencing Guidelines nor its characterization of the vagueness doctrine accurately reflects the state of the law. I will address each in turn.
A.
In explaining why the Supreme Court’s holding in Johnson doesn’t apply to the Guidelines, the panel relied on United States v. Tichenor, 683 F.3d 358 (7th Cir. 2012). The Seventh. Circuit decided Tiche-nor before the Supreme Court’s ruling in Johnson, and held in Tichenor that the Guidelines are not susceptible to challenge on vagueness grounds. The Matchett panel followed the lead of the Seventh Circuit, quoting from its opinion as follows: “ ‘[Sjinee the Guidelines are merely advisory, defendants cannot rely on them to communicate the sentence that the district court will impose. Defendants’ inability to look to the Guidelines for notice underscores why ... they cannot bring vagueness challenges against the Guidelines.’” 802 F.3d at 1194 (quoting Tichenor, 653 F.3d at 365). But the Seventh Circuit’s path in Tichenor is no longer there for us to follow. In light of the Supreme Court’s decisions in Johnson and Peugh v. United States, — U.S. —, 133 S.Ct, 2072, 186 L.Ed.2d 84 (2013), the Seventh Circuit has abandoned Tichenor. See Hurlburt, No. 14-3611. Indeed that court recognized that Johnson and Peugh “have fatally undermined [Tichenor’s] reasoning.” Id. at 3.
In Peugh, the Supreme Court applied the Ex Post Facto Clause to the Sentencing Guidelines. 133 S.Ct. at 2078. Like the vagueness doctrine, the Ex Post Facto Clause imposes a constitutional requirement of “fair notice.” Weaver v. Graham, 450 U.S. 24, 30, 101 S.Ct. 960, 965, 67 L.Ed.2d 17 (1981). This right to fair notice, *1137 the Supreme Court'.concluded, is violated “when a defendant is' sentenced under Guidelines promulgated after he committed'his criminal acts and the-new version provides a higher applicable Guidelines sentencing range than the version in place at the time of the offense,” Peugh, 133 S.Ct. at 2078.
The notion that the Sentencing Guidelines do not regulate private conduct — or, in the words of Matchett, do not “fix punishments,” 802 F.3d at 1189 — rests on the idea that the Guidelines play a minimal or optional role in the sentencing process. As Matchett put it, the Guidelines merely “ ‘assist ... the sentencing judge’ in determining a sentence.” Id. at 1194 (quoting Tichenor, 653 F.3d at 364). But Peugh has put this misconception to rest. Peugh told us that although the Guidelines are advisory, they “remain the starting point for every sentencing calculation in the federal system.” 133 S.Ct. at 2083. In fact, the Eleventh Circuit has long required district judges to calculate the guideline range for the person being sentenced. United States v. Crawford, 407 F.3d 1174, 1179 (11th Cir. 2005) (citing United States v. Shelton, 400 F.3d 1325, 1332 n.9 (11th Cir. 2005)). So while judges can choose a sentence outside what the Guidelines recommend, the Supreme Court has for good reason emphasized “the centrality of the Guidelines in the sentencing process.” Molina-Martinez v. United States, — U.S. —, 136 S.Ct. 1338, 1346, 194 L.Ed.2d 444 (2016). In Molina-Martinez, the Supreme Court again reminded us that the Guidelines are “the starting point for the district court’s decision and anchor the court’s discretion in selecting an appropriate sentence.” Id. at 1349; see also id. at 1342 (“The Sentencing Guidelines provide the framework for the tens of thousands of federal sentencing proceedings that occur each year.”); Peugh, 133 S.Ct. at 2087 (“District courts must begin their sentencing analysis with the Guidelines ... and use them to calculate the sentencing range correctly; and those Guidelines will anchor both the district court’s discretion and the appellate review process.”).[8]
The Guidelines have this “anchor” effect even when judges depart from them. “Even if the sentencing judge sees a reason to vary from' the Guidelines, if the judge uses the sentencing range as the beginning point to explain the decision to deviate from it, then the Guidelines are in a real sense the basis for the sentence.” Peugh, 133 S.Ct. at 2083 (quotation omitted). “In less than one-fifth of cases since 2007 have district courts imposed above- or below-Guidelines sentences absent a Government motion. Moreover, the Sentencing Commission’s data indicate that when a Guidelines range moves up or down, offenders’ sentences move with it.” Id. at 2084 (citations omitted). Indeed, a vague guideline can wreak harm on a defendant even before he is convicted of any crime. See Peugh, 133 S.Ct. at 2085 (plurality opinion) (citation omitted) (“[A] defendant charged with an increased punishment for his crime is likely to feel en hanced pressure to plead guilty. This pressure does not disappear simply be *1138 cause the Guidelines range is advisory; the defendant will be aware that the range is intended to, and usually does, exert controlling influence on the sentence that the court will impose.”)-[9] Peugh recognizes that the Sentencing Guidelines govern both how a judge decides a sentence, as well as the private conduct of the person who will be sentenced.
Peugh outright rejected the idea the Matchett panel relied on — that the Guidelines need not give notice because they are “purely advisory.” Id. at 2087 (majority opinion). The Court wrote: “[i]t is simply not the case that the Sentencing Guidelines are merely a volume that the district court reads with academic interest in the course of sentencing.” Id. Rather, the Guidelines are “the Federal Government’s authoritative view of the appropriate sentences for specific crimes.” Id at 2085 (plurality opinion). And they announce “the most recent views of the agency charged by Congress with developing sentencing policy.” Id. at 2087 (majority opinion). For these reasons the Guidelines must “give fair warning of their effect and permit individuals to rely on their meaning.” Miller v. Florida, 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987) (quotation omitted) (applying the Ex Post Facto Clause to Florida’s advisory sentencing guidelines); see also Peugh, 133 S.Ct. at 2085 (plurality opinion) (“The [Ex Post Facto] Clause ensures that individuals have fair warning of applicable laws.”).
The vagueness doctrine must apply to the Sentencing Guidelines. Just as the Ex Post Facto Clause ensures “fair warning,” the vagueness doctrine says no law can be “so vague that it fails to give ordinary people fair notice of the conduct it punishes.” Johnson, 135 S.Ct. at 2556. The Matchett panel rejected Johnson, saying “advisory guidelines that inform a sentencing judge’s discretion ... cannot violate the notice requirement.” 802 F.3d at 1195. Peugh tells us the opposite.
The panel’s idea that notice is not relevant to the Sentencing Guidelines seems to be based on its misreading of Irizarry v. United States, 553 U.S. 708, 128 S.Ct. 2198, 171 L.Ed.2d 28 (2008). See 802 F.3d at 1194; Pryor Op. at 1122, 1124. Irizarry held that Rule 32 of the Federal Rules of Criminal Procedure does not require a judge to say in advance of the sentence hearing what sentence she may impose. Id. at 709, 128 S.Ct. at 2200. In contrast, neither Peugh nor Johnson has anything to do with what a judge must say in any single case. Peugh and Johnson tackle the larger question of what notice is due the entire public about what punishment can be expected for a given offense. This type of notice is required from the “sentencing process long before the district court imposes the sentence.” Molina-Martinez, 136 S.Ct. at 1342. That’s why Peugh says that the Guidelines must give notice of what conduct the courts will punish, even if a particular judge is not required to give advance warning about how she will use her discretion in a given case.
The Matchett opinion ignores these lessons from Peugh, Johnson, and Molina-Martinez. Worse, the Matchett panel relies on decisions of the other courts of appeal that those courts have themselves recognized are no longer good law in light of Peugh, Johnson, and Molina-Martinez. For example, the panel purported to “join” *1139 the Sixth Circuit “insofar as we reject Matchett’s argument that advisory guidelines can be unconstitutionally vague.” 802 F.3d at 1196 (citing United States v. Smith, 73 F.3d 1414, 1418 (6th Cir. 1996)). As it happens, the Sixth Circuit has itself considered this same argument and held “that the rationale of Johnson applies equally to the residual clause of the Guidelines.” United States v. Pawlak, 822 F.3d 902, 911 (6th Cir. 2016) (overruling Smith, 73 F.3d 1414). The Matchett panel also twice quoted from United States v. Wivell, 893 F.2d 156 (8th Cir. 1990), and so does today’s Statement. See 802 F.3d at 1194-95, 1196; Pryor Op. at 1122-23, 1123-24. But the Eighth Circuit has recognized that “[t]he reasoning in Wivell that the guidelines cannot be unconstitutionally vague because they do not proscribe conduct is doubtful after Johnson.” Taylor, 803 F.3d at 933. And as I mentioned, the Tichenor opinion, quoted by the Matchett panel four times, has now been overruled by the Seventh Circuit sitting en banc. Hurlburt, No. 14-3611. This leaves only the Fifth Circuit among the courts relied upon by the Matchett panel, and it has also vacated § 4B1.2 sentences in light of Johnson. See, e.g., Estrada, No. 15-40264. The Eleventh Circuit is now all alone on this.
Finally, in his Statement Judge Pryor tells us that federal judges depart from the Sentencing Guidelines so often that the “guidelines cannot notify a defendant of what sentence he will receive.” Pryor Op. at 1122. In fact, he says “the odds of receiving a sentence within the guideline range are worse than a coin flip.” Id. at 1123. While he cites statistics that make this seem true, the fact is that district judges give the Sentencing Guidelines much more deference than he lets on.
It is true that in 52.7 percent of all sentencings in 2015 the judge did not sentence the defendant within the guideline range. U.S. Sentencing Comm’n, 2015 Sourcebook of Federal Sentencing Statistics tbl. N. However, the statistics also tell us that for all sentences imposed during 2015, in which a judge imposed a sentence below the guideline range, 58 percent of the time the judge did so based on the government’s motion.[10] Id. This means that in the majority of cases in which a judge sentenced a defendant below the guideline range, she did so not because of her distaste or disregard for the Guidelines. Instead she sentenced outside of the guideline range because the prosecutor asked her to. In other words, everyone who is in court for the sentence hearing recognizes that, unless the government asks for a below-guideline sentence, the district judge is often going to sentence the defendant within the guideline range. Also important, it was in only 2.2 percent of all cases that a judge sentenced a defendant above the guideline range. Id. So while a person may not be able to rely on the Guidelines to predict whether he will receive a sentence even lower than the bottom of the guideline range, he can reliably use the Guidelines to predict the harshest sentence he’ll get.
B.
This is how the Matchett panel got the Sentencing Guidelines wrong. But the panel got the vagueness doctrine wrong as well. It said “[t]he vagueness doctrine applies only to laws that prohibit conduct and fix punishments.” 802 F.3d at 1189." Or as the Statement now says, the doctrine “applies only to laws that regulate the primary conduct of private citizens.” Pryor Op. at 12. I say federal policy that causes *1140 certain conduct to be punished by more years in prison ■ “prohibits] conduct and fix[es] punishments” and regulates “private citizens.” But even if I am wrong on this, we know that the Supreme Court’s application of the vagueness doctrine is not limited to things that “prohibit conduct and fix punishments,”
For example, in Giaccio v. State of Pennsylvania, 382 U.S. 399, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966), the Supreme Court held unconstitutionally vague a Pennsylvania law that allowed juries, after acquitting a defendant, to decide whether to charge that defendant the costs of prosecution. Specifically, the jury could impose costs if it found the defendant “guilty of some misconduct less than the offense which is charged but nevertheless misconduct of some kind as a result of which he should be required to pay some penalty[.]” Id. at 404, 86 S.Ct. 518. The statute said that, if a jury decides to impose costs, the trial judge “‘shall forthwith pass sentence to that effect, and order him (defendant) to be committed to the jail of the. county’ there to remain until he either pays or gives security for the costs.” Id. at 403, 86 S.Ct. 518. The Supreme Court recognized that the law was not a penal “statute which imposed forfeitures, punishments or judgments for costs.” Id at 404, 86 S.Ct. 518. Yet while the statute neither prohibited conduct nor fixed punishment, “[t]he Court did not hesitate in striking down the statute on vagueness grounds.” Pac. Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 49, 111 S.Ct. 1032, 1059, 113 L.Ed.2d 1 (1991) (O’Con-nor, J., dissenting). The Statement argues that the Pennsylvania statute, unlike the Sentencing Guidelines, “imposed a penalty for out-of-court conduct by a private citizen” and thus “regulated primary conduct.” Pryor Op. at 1124-25. Not so. Rather, the law at issue in Giaccio is closely analogous to the Sentencing Guidelines. Contrary to Judge Pryor’s description in the Statement, the statute did not “require[ ]” a jury to impose costs. Id. at 12, 111 S.Ct. 1032, 1059. Rather it authorized the jury to impose the “sentence” in its discretion. Giaccio, 382 U.S. at 401, 86 S.Ct. 518. It was, in effect, an advisory sentencing guideline. Giaccio thus makes clear that, while the vagueness doctrine might more commonly apply to laws that directly govern private conduct, the doctrine also applies to laws that govern judges’ or juries’ decisions about whether and how to punish private conduct. And this is true even where that decision-making is fully discretionary.[11]
The application of the vagueness doctrine to rules that guide discretionary sentencing goes to the very heart of the fairness interests that the doctrine is designed to protect. Johnson reminded us of two ways in which vague laws can violate the Fifth Amendment’s guarantee of due process of law: by being “so vague that [the law] fails to give ordinary people fair notice of the conduct it punishes, or so stan-dardless that it invites arbitrary enforcement.” 135 S.Ct. at 2556. The Court then held that the 13 words of ACCA’s residual clause were unlawful in both these ways: “We are convinced that the indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges.” Id. at 2557.
*1141 The Matchett panel gave no heed to these admonitions against “arbitrary enforcement.” Zero. Instead, the panel addressed only Johnson’s “notice” rationale, without ever mentioning the Court’s concern about “arbitrary enforcement by judges.” This matters because we have been instructed that the “arbitrary enforcement” concern is “the more important aspect of vagueness doctrine.” Kolendar v. Lawson, 461 U.S. 352, 358, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). Perhaps reflecting this lesson, every time Johnson told us why the residual clause is not lawful, it underscored the problem that the vague language of the clause led different judges to give similarly situated defendants widely varying sentences.[12] But again, the panel made no effort to address this concern about arbitrariness, which the Supreme Court told us is “the more important aspect of vagueness doctrine.” Id.
If the panel had been willing to evaluate how the residual clause in the Sentencing Guidelines leads to “arbitrary enforcement by judges,” then the case would have eásily resolved in Mr, Matchett’s favor.[13] The Supreme Court has told us that overly vague laws violate our Constitution because they “delegate[] basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.” Grayned v. City of Rockford, 408 U.S. 104, 108-09, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222 (1972). Or as Johnson put it, “the indeterminacy of the wide-ranging inquiry required by the residual clause” makes the clause unconstitutional because it “invites arbitrary enforcement by judges.” 135 S.Ct. at 2557.
The risks of “discriminatory application” and “arbitrary enforcement” here should be obvious. Two judges who are sentencing defendants with identical records can arrive at different sentences based on each judge’s personal sense of what seems like a crime of violence. Judges who must review sentences imposed under USSG § 4B1.2 will certainly try to apply pre-Johnson residual clause opinions correctly.[14] But Justice Scalia once said that he worried that, in the end, judges will have little choice but to “simply throw the opinions into the air in frustration, and give free rein to their own feelings as to what offenses should be considered crimes of violence.” Derby v. United States, 564 U.S. *1142 1047,131 S.Ct. 2858, 2859,180 L.Ed.2d 904 (2011) (Scalia, J., dissenting from denial of certiorari).[15] Of course we expect that judges will not act so ignobly. But “the due process protection against vague regulations does not leave the public at the mercy of noblesse oblige.” FCC v. Fox Television Stations, Inc., — U.S. —, 132 S.Ct. 2307, 2318, 183 L.Ed.2d 234 (2012) (quotation omitted), Instead it bans any regulation that is “so standardless that it authorizes or encourages seriously discriminatory enforcement.” United States v. Williams, 553 U.S. 285, 304, 128 S.Ct. 1830, 1845, 170 L.Ed.2d 650 (2008).
III.
Also worrisome, the Matchett panel opinion forces this court to continue to apply and even add to the body of law that Johnson discredited- when it reviews the sentences of individuals who were sentenced under § 4B1.2(a)(2)’s residual clause. The panel recognizes that in Johnson, the Court “abrogated the previous decisions of the Supreme Court interpreting the residual clause.” 802 F.3d at 1195. But the panel nevertheless instructs courts that we “must still adhere to the reasoning of [these] cases” when interpreting § 4B1.2. Id. at 1195-96. Our court will thus continue to apply cases the Supreme Court derided as “anything but evenhanded, predictable, or consistent.” Johnson, 135 S.Ct. at 2563. Indeed Johnson referenced several § 4B1.2 cases to illustrate how the residual clause “produces more unpredictability and arbitrariness than the Due Process Clause tolerates.” Id. The Supreme Court even gave this court an unwanted tip of the hat, when it cited one of our § 4B1.2 opinions to declare that “[t]his Court is not the only one that has had trouble making sense of the residual clause.” Id. at 2559-60 (quotation omitted) (citing United States v. Whitson, 597 F.3d 1218 (11th Cir. 2010)). By my reading, the Supreme Court treated the problem with the residual clause in the statute as identical to the problem with the residual clause in the Sentencing Guidelines.[16]
IV.
The panel warned that applying the vagueness doctrine to the residual clause in the Guidelines “would upend our sentencing regime” since “many [Guidelines] provisions could be described as vague.” Id. at 1196. Now in his Statement, Judge Pryor expands the point. He describes an even more forbidding scene in which all sentencing guidelines, in both the federal and state systems, could be invalidated. Pryor Op. at 1127-28. I am sure he does not mean to advocate abandoning our Constitution because the effect of enforcing it would be too disruptive. This approach would seem, as Justice Brennan put it, “to suggest a fear of too much justice.” McCleskey v. Kemp, 481 U.S. 279, 339, 107 S.Ct. 1756, 1791, 95 L.Ed.2d 262 (1987) (Brennan, J., dissenting). And in any event, while I appreciate Judge Pryor’s *1143 full-throated defense of the Sentencing Guidelines, the Guidelines are not under attack. Johnson did not invalidate any or all guidelines that “could be described as vague.” Instead the Court singled out a far more distinct problem: laws that require judges to apply overly vague standards “to a judicially imagined ‘ordinary ease’ of a crime, not to real-world facts.” 135 S.Ct. at 2557; see also id. at 2558 (“It is one thing to apply an imprecise “serious potential risk” standard to real-world facts; it is quite another to apply it to a judge-imagined abstraction”).
The Guidelines determine punishment based almost exclusively-on a defendant’s actual conduct.[17] Consider the two provisions that the Matchett panel warned could next be deemed vague. See 802 F.3d at 1196. The first asks if the defendant used “sophisticated means” in committing the actual crime. USSG § 2Bl.l(b)(10). The other asks if she played a “minor” role in the actual crime. Id. § 3B1.2(b). Johnson expressly condones standards that assess actual conduct in this way. See 135 S.Ct. at 2561 (“[WJe do not doubt the constitutionality of laws that call for the application of a qualitative standard such as ‘substantial risk’ to real-world conduct.”). What the panel describes as a slippery slope in fact contains a clear, well-defined “constitutional toehold.” Walz v. Tax Comm’n of City of New York, 397 U.S. 664, 699-700, 90 S.Ct. 1409, 1427, 25 L.Ed.2d 697 (1970) (Harlan, J., concurring).
But even if applying Johnson to the identical residual clause in the Guidelines were to lead to a future holding that some other provision of the Guidelines is also void for vagueness, this possibility is no basis for refusing to uphold the Constitution here. The prospect that there may be other provisions of the Guidelines that are unconstitutionally vague “may be dismaying, but it does not justify complete abdication of our judicial role. The Constitution was framed fundamentally as a bulwark against governmental power, and preventing the arbitrary administration of punishment is a basic ideal of any society that purports to be governed by the rule of law.” McCleskey, 481 U.S. at 339, 107 S.Ct. 1756 (Brennan, J., dissenting). Our court and the people of Alabama, Florida, and Georgia would have been well served by vacatur of the Matchett panel opinion. I dissent from the court’s vote to leave it intact.

. United States v. Soto-Rivera, 811 F.3d 53 (1st Cir. 2016); United States v. Welch, 641 Fed.Appx. 37 (2d Cir.2016); United States v. Townsend, 638 Fed.Appx. 172 (3d Cir.2015); United States v. Frazier, 621 Fed.Appx. 166 (4th Cir. 2015); United States v. Estrada, No. 15-40264 (5th Cir. Oct. 27, 2015); United States v. Pawlak, 822 F.3d 902 (6th Cir.2016); United States v. Hurlburt, 835 F.3d 715, No. 14-3611, 2016 WL 4506717 (7th Cir. Aug. 29, 2016); United States v. Taylor, 803 F.3d 931 (8th Cir. 2015) (per curiam); United States v. *1134 Benavides, 617 Fed.Appx. 790 (9th Cir. 2015); United States v. Madrid, 805 F.3d 1204 (10th Cir. 2015). At least-two of these courts have published opinions naming the panel opinion and criticizing it at length. See Madrid, 805 F.3d at 1212 n.10; Pawlak, 822 F.3d at 908-09; see also Soto-Rivera, 811 F.3d at 61 n.10 . ("[T]he Eleventh Circuit's reasoning ... appears well on its way of becoming a minority view.”).

. Since Matchett was decided, the Sentencing Commission has amended the Guidelines to repeal § 4B1.2(a)(2)'s residual clause in light of Johnson. The amendment became effective August 1, 2016. 81 Fed. Reg. 4741, 4742 (2016). While the Commission’s decision will prevent any person from being sentenced under the residual clause in the future, it provides no relief for prisoners like Mr. Matchett who have already been sentenced under the clause.

. See Beckles v. United States, — U.S. —, 136 S.Ct. 2510, 195 L.Ed.2d 838 (2016). It is important to note that our court has expanded the ruling in Matchett. While Matchett is a case where the inmate was sentenced under the advisory guidelines, our court relied on Matchett to hold that prisoners can’t even make "a prima facie showing" that Johnson applies to the pre-Booker mandatory guidelines. See In re Griffin, 823 F.3d 1350 (11th Cir.2016). Three of my colleagues have explained in detail "why [they] believe Griffin is deeply flawed and wrongly decided” even if Matchett is correct. In re Sapp, 827 F.3d 1334, 1337 (11th Cir.2016) (Jordan, Rosenbaum, and Jill Pryor, JJ., concurring). I share their view. I add that Travis Beckles was sentenced after Booker, which means the Supreme Court’s ruling in his case might not address the mandatory guidelines issue the Eleventh Circuit decided in Griffin.

. See http://www.ussc.gov/sites/default/files/ pdf/research-and-publications/quick-facts/ Quick_Facts_Career_Offender_FY 14.pdf. In over 90 percent of these cases, § 4B1.1 “increased the guideline range.” Id. Also, two of the top five judicial districts for § 4B1.1 sentences are within the Eleventh Circuit. See id. This is the latest data published by the Sentencing Commission.

. Our court has two Judge Pryors. By this citation, I refer to Judge William Pryor and his Statement respecting the denial of rehearing of Mr. Matchett's case en banc. I will refer to this as Judge Pryor's "Statement.”

. Matchett does not use the "private conduct” language that now appears throughout the Statement. The panel opinion does employ precisely the same reasoning, however, couched in slightly different terms. See Matchétt, 802 F.3d at 1189-94 ("The vagueness doctrine applies only to laws that prohibit conduct and fix punishments.... The Armed Career Criminal Act defines a crime and fixes a sentence, see 18 U.S.C, § 924(e), but the advisory guidelines do neither.”).

. The concept of an "anchor” effect makes sense, If a judge is told a sentencing range, her sentence is likely-to be weighted toward that range no matter how far she might be permitted to depart from it. See Timur Kuran & Cass R. Sunstein, Availability Cascades and Risk Regulation, 51 Stan. L. Rev. 683, 705 (1999) (explaining how a number that appears early in a decision-making process "serves as a perceptual ‘anchor’ ” and distorts the ultimate decision even if the decision-maker has wide,discretion); see also Stepha-nos Bibas & Susan Klein, The Sixth Amendment and Criminal Sentencing, 30 Cardozo L, Rev. 775, 779 (2008) (noting that the advisory federal guidelines "provide mental anchors, starting points that influence how judges think about cases and where they wind up”).

. Uncertainty about § 4B1.2’s meaning also distorts plea bargaining in state courts, where “[p]leas account for nearly 95% of all [felony] convictions." Padilla v. Kentucky, 559 U.S. 356, 372 & n.13, 130 S.Ct. 1473. 1485 & n.13. 176 L.Ed.2d 284 (2010). State defendants negotiating plea deals won't likely know how their current conviction will impact a future § 4B1.2 sentence in federal court.

. This category consists of all cases in which "the prosecution initiated, proposed, or stipulated to a sentence” below the guideline range. Federal Sentencing Statistics tbl. N.

. The Supreme Court also made clear in Giaccio that the scope of the vagueness doctrine, whatever it might be, is not decided by fitting a given law or policy into formalistic categories. Giaccio, 382 U.S. at 402, 86 S.Ct. 518 ("Whatever label be given the 1860 Act, there is no doubt that it provides the State with a procedure for depriving an acquitted defendant of his liberty and his property.... [T]his state Act whether labeled ‘penal’ or not must meet the challenge that it is unconstitutionally vague.”).

.See, e.g„ 135 S.Ct. at 2558 ("[TJhis Court’s repeated attempts and repeated failures , to craft a principled and objective standard out of the residual clause confirm its hopeless indeterminacy.”); id. at 2559-60 ("This Court is not the only one that has had trouble making sense of the residual clause. The clause has created numerous splits among the lower federal courts, where it has proved nearly impossible to apply consistently.”) (quotation ■ omitted); id. at 2560 ("Nine years’ experience trying to derive meaning from the residual clause convinces us that we have embarked upon a failed'enterprise.”); id. at 2562 (“[T]he experience of the federal courts leaves no doubt about the unavoidable uncertainty and arbitrariness of adjudication under the residual clause.”); id, at 2563 ("Decisions under the residual clause have proved to be anything but evenhanded, predictable, or consistent.”).

. Judge Pryor never tries to argue that the residual clause in the Sentencing Guidelines could withstand scrutiny under the vagueness doctrine. He concedes that, once subject to the vagueness doctrine, the clause must fail. Piyor Op. at 112,5.

. As detailed in the next section, even though these cases were overruled by Johnson, courts in the Eleventh Circuit are required to keep applying them. See Matchett, 802 F.3d at 1195-96 ("[Sjentencing courts interpreting the residual clause of the guidelines must still adhere to the reasoning of cases interpreting the nearly identical language in [ACCA],”).

. Note that Justice Scalia refers here to "crimes of violence” (the term USSG § 4B1.2 defines), not "violent felony” (the term used in ACCA, see 18 U.S.C. § 924(e)(2)(B)). Perhaps the panel would say this was an oversight. But the Supreme Court has always treated both residual clauses identically, including in Johnson itself.

. Up until Matchett, this court also recognized that the two "residual clauses are identical” and treated them that way. United States v. Alexander, 609 F.3d 1250, 1253 (11th Cir. 2010), Most notably, we did so on the flip side of the exact issue decided in Matchett. See United States v. Chitwood, 676 F.3d 971, 978 n.3 (11th Cir. 2012) (noting that the Supreme Court’s rejection of a vagueness challenge to ACCA’s residual clause "appears to foreclose” a vagueness challenge to § 4B1.2’s residual clause).

. See United States v. Booker, 543 U.S. 220, 250, 125 S.Ct. 738, 759, 160 L.Ed.2d 621 (2005) (remedial opinion for the Court by Breyer, J.) ("Congress' basic statutory goal — a system that diminishes sentencing disparity— depends for its success upon judicial efforts to determine, and to base punishment upon, the real conduct that underlies the crime of conviction.”). For more on the "real conduct" focus of the Sentencing Guidelines, see Stephen Breyer, The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest, 17 Hofstra L. Rev. 1, 12 (1988).